IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELIZABETH ARDELL GRACE RONSHAUGEN,<br><br>Defendant. | CR  21–117–BLG–DLC<br><br><br>ORDER |

Defendant Elizabeth Ardell Grace Ronshaugen moves the Court to reduce her sentence under 18 U.S.C. § 3582(c)(1)(A).  She is currently serving a 48-month sentence for a federal drug offense.  *See* Judgment (Doc. 63).  Her projected release date is January 23, 2025.  *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed June 1, 2023).

On August 23, 2021, the Court appointed counsel to represent Ronshaugen.  *See* Order (Doc. 74).  Counsel filed a supplemental motion and the United States submitted a response.

## I.  Legal Framework

After considering the sentencing factors in 18 U.S.C. § 3553(a), the Court may reduce a sentence if "extraordinary and compelling reasons warrant such a

reduction."  18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Keller*, 4 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Demonstrating an extraordinary and compelling reason to reduce the sentence establishes one element of a compassionate release motion.  To determine whether relief is appropriate, a court must also consider the objectives of federal sentencing set forth in 18 U.S.C. § 3553(a).  Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care.  *See* 18 U.S.C. § 3553(a)(1), (2).  The Court may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants.  *See id*. § 3553(a)(4), (6).

## II.  Discussion

### A.  Reason for Release

Ronshaugen is 31 years old.  At the time of her sentencing, she had been diagnosed with endocarditis, and she had received a tricuspid valve replacement on December 9, 2015.  (*See* Presentence Investigation Report ("PSR"), Doc. 65 ¶ 67.)  While in custody before her sentencing hearing, she was hospitalized for three days

for tachycardic heart condition.  (PSR ¶ 70.)  Since her sentencing hearing, she has

been hospitalized for an atrial flutter and leaking heart valves, and she has been

referred to the Mayo Valve Clinic and recommended for evaluation for ablation

therapy.  (Doc. 81-1 at 1, 9, 130–33, 183.)  Ronshaugen argues that her heart

conditions are worsening and that the seriousness of her conditions was not fully

recognized at the time of her sentencing.  (Doc. 80 at 7.)  She argues that her

conditions also place her at greater risk of serious injury or death as a result of

COVID-19 infection.  (*Id.* at 6–8.)  "Having heart conditions . . . can make you

more likely to get very sick from COVID-19."  Centers for Disease Control,

*People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html (updated May

11, 2023, and accessed June 5, 2023).  She further contends that her newer

diagnoses present a high risk of blood clots and strokes, and she is concerned that

staffing ratios on her housing unit and lack of staff training regarding medical

emergencies could increase the risk of death from a stroke.  (Doc. 80 at 8.)

Even assuming that Ronshaugen's medical conditions constitute an

extraordinary and compelling reason for her release, the Court finds that the

Section 3553(a) factors do not warrant compassionate release for the reasons set

forth below.

## B.  Section 3553(a) Factors

Ronshaugen was convicted of possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).  (PSR ¶¶ 3–7.)  In September 2021, the residence she shared with her codefendant was searched pursuant to a warrant, and law enforcement agents discovered methamphetamine, heroin, and numerous firearms and multiple rounds of ammunition.  (PSR ¶ 10.)  This search had no apparent deterrent effect; in November 2021, the Wyoming Highway Patrol conducted a traffic stop on Ronshaugen and her codefendant's vehicle and seized approximately 961 grams of fentanyl pills, 103.2 grams methamphetamine (95–97% purity), 466.9 grams of heroin, 1 gram of cocaine, 14 dilaudid pills, and $9,775 in U.S. currency; more fentanyl pills were discovered hidden on Ronshaugen's person when she was transported to jail.  (PSR ¶ 14.)  Ronshaugen admitted that she and her codefendant had traveled to Denver, Colorado four times for the purpose of obtaining drugs to distribute in Billings, Montana.  (PSR ¶ 15.)  Her sister provided agents with an additional approximate 364.1 grams of fentanyl pills and 138.9 grams of heroin that her sister had stashed in her residence for Ronshaugen.  (PSR ¶ 16.)  Pursuant to the plea agreement in this case, the parties agreed that she should receive a minor role adjustment for her role in the offense, but her total offense level remained high at 27, driven by the quantity of drugs for which she was held responsible.  (PSR ¶¶ 22–31.)  As an

4

adult, she had frequent encounters with law enforcement resulting in misdemeanor offenses, including for driving under the influence of alcohol, repeated theft of hundreds of dollars of merchandise from stores, and possession of methamphetamine.  (PSR ¶¶ 36–47.)

Ronshaugen's crime of conviction carried a ten-year mandatory minimum sentence of imprisonment, which she escaped only by virtue of her eligibility for the broadened Safety Valve under the First Step Act.  Her sentence of 48 months represented significant leniency at sentencing, which expressly took into consideration her serious medical conditions and recommended placement at a federal medical facility.  (Doc. 63 at 2; Doc. 64 at 3.)  After finding that she satisfied the broadened version of the Safety Valve as set forth in the First Step Act and applying a two-level decrease to the offense level as a variance, her advisory guideline range was 84 to 105 months.  (Doc. 64 at 3.)  The Court searched diligently for the sentence that was "sufficient, but not greater than necessary" to meet the objectives of federal sentencing, *see* 18 U.S.C. § 3553(a).  Ronshaugen's sentence of 48 months was three full years below the low end of the guideline range.  The variance the Court applied reflected the Court's understanding that Ronshaugen's involvement in distributing drugs in the Billings area was related to her own addiction and long history of substance abuse, but it also reflected the Court's recognition of the seriousness of her conduct and that her addiction was so

5

powerful that she continued to abuse substances even after her health and life were jeopardized by drug use, and thus participation in RDAP would provide her with correctional treatment in the most effective manner.  (Doc. 64 at 3; *see also* PSR ¶ 67 (reflecting medical records that intravenous drug abuse caused endocarditis and necessitated tricuspid valve replacement; Ronshaugen left the hospital multiple times against medical advice; and nurse found white powdery substance in her bathroom and believed she attempted to place substance in her IV port), ¶ 78 (reflecting that she smoked 20 to 30 fentanyl pills per day at the time of her arrest), ¶ 80 (reflecting three significant heroin overdoses over the course of five years, including one instance of using Narcan).)  Ronshaugen's sentence was the lowest the Court could justify in light of her history of apparently undeterred substance abuse, which in turn fueled her extremely serious and dangerous offense conduct.

One of the Section 3553(a) factors is providing the defendant with medical care.  18 U.S.C. § 3553(a)(2)(D).  The Court understands that incarceration necessarily limits a person's ability to provide self-care and to make medical decisions such as visiting an emergency room without approval by and assistance of others.  However, it appears that BOP has taken Ms. Ronshaugen's conditions appropriately seriously by placing her at FCI Waseca, which is near the main campus of the Mayo Clinic in Rochester, Minnesota; referring her to the Mayo Valve Clinic with urgent priority to determine whether to pursue valve repair (Doc.

81-1 at 3, 110); and sending her to the emergency department following reports of chest pain (*id.* at 20, 158).  Specifically concerning COVID-19, the Court notes that she had received complete vaccination and had a prior positive result in January of 2022, with no indication in the record that she developed severe illness as a result of that infection.  (*Id.* at 42, 85.)  Considering these facts, the Court concludes that the need to provide medical care does not weigh in favor of modifying Ms. Ronshaugen's sentence of imprisonment at this time.

Ms. Ronshaugen argues that she is not a danger to the community and has been pursuing rehabilitative programming to the best of her ability.  (Doc. 80 at 16; Doc. 80-1.)  Although the Court is encouraged by her commitment to sobriety, the Court remains of the opinion it expressed at sentencing that Ms. Ronshaugen would benefit tremendously from participation in RDAP and remains concerned about her ability to remain sober in the community without first receiving intensive treatment in a confined setting in light of her extreme substance abuse in the past, including continuing to use drugs when doing so placed her life in very serious jeopardy.  Accordingly, the Court finds that these factors do not weigh in favor of modification of her sentence at this time.

In sum, after considering all of the information before the Court and applying the factors outlined under 18 U.S.C. § 3553(a), the Court finds that its initially imposed sentence of 48 months continues to be a sentence that is sufficient

but not greater than necessary.  Accordingly, the Court will deny the motion to reduce Ms. Ronshaugen's sentence of imprisonment at this time.

## C.  Conclusion

Ms. Ronshaugen is vulnerable to severe illness or even death if she contracts COVID-19 or if her heart conditions worsen, and the Court does not want any harm to come to her.  But the Court considered these facts at her initial sentencing, and the Court concluded that a significant downward variance to a sentence of 48 months appropriately accounted for her history and characteristics as well as the seriousness of the offense and the need to provide her with significant substance abuse treatment to protect the public and deter her from future crimes. Considering all the relevant circumstances, reducing her sentence to the time she has served to date would denigrate the seriousness of her offense and would not afford adequate deterrence to criminal conduct, protect the public from future crimes of the defendant, or provide correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a)(2)(A)–(D).

Accordingly, IT IS ORDERED that Ronshaugen's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 73, 79, 80) is DENIED.

DATED this 8th day of June, 2023.


Dana L. Christensen, District Judge
United States District Court